**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**DAVID MICHAEL B.,**

**Plaintiff,**

**v.**

**Civil Action 1:26-cv-75**
**Judge Jeffery P. Hopkins**
**Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, David Michael B. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of supplemental security income ("SSI") and for child disability benefits ("CDB"). This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 12), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I. BACKGROUND

Plaintiff filed his SSI application in June 2021, when he was seventeen years of age. (R. at 397.) In that application, he alleged disability beginning August 1, 2008, when he was five years old. (*Id.*) After achieving adulthood, Plaintiff filed his CDB application in September 2022,

alleging that he was the disabled adult child of a disabled or retired adult. (*Id*. at 404.) He again alleged disability beginning August 1, 2008. (*Id*.)

Plaintiff's applications were denied initially and upon reconsideration. (*Id*. at 110–11, 143–44.) An Administrative Law Judge "ALJ" then held a hearing in June 2023, at which Plaintiff, who was represented by council, and a vocational expert ("VE") appeared and testified. (*Id*. 77–109.) The ALJ issued an unfavorable determination in September 2023. (*Id*. at 148–76.) The Appeals Council vacated that determination and remanded it. (*Id*. at 177–82.) Upon remand, the ALJ held another hearing in June 2025, at which Plaintiff, again represented by counsel, and a VE appeared and testified. (*Id*. at 58–76.) The ALJ issued a second unfavorable determination in July 2025 that became final when the Appeals Council declined review. (*Id*. at 7–44, 1–7.)

Plaintiff seeks judicial review of that second unfavorable determination. He contends that the ALJ reversibly erred when evaluating prior administrative findings from state agency reviewing psychologists. (Pl.'s Statement of Errors 7–11, ECF No. 10.) The undersigned does not agree.

## II. THE ALJ'S DECISION

The ALJ issued the second unfavorable determination on July 29, 2025. (R. at 7–44.) The ALJ initially determined that Plaintiff was born on July 8, 2003, and was a school-aged child when he filed his SSI application. (*Id*. at 15.) He further noted that for Social Security purposes, Plaintiff turned eighteen on July 7, 2021. (*Id*.)

The ALJ then evaluated Plaintiff's SSI application for the period before he turned eighteen using a three-step sequential[1] process. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity. (*Id.*) At step two, the ALJ determined that prior to turning eighteen, Plaintiff had the following severe impairments: obesity and borderline intellectual functioning. (*Id.*) At step three, the ALJ determined that prior to turning eighteen, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ further determined that prior to turning eighteen, Plaintiff did not have an impairment or combination of impairments that functionally equaled the severity of any listed impairments. (*Id.* at 16.) Accordingly, the ALJ determined that Plaintiff was not disabled as defined in the Social Security Act prior to turning eighteen. (*Id.* at 27.)

---

[1] For the period before a claimant reaches the age of eighteen, Social Security Regulations require ALJs to evaluate SSI applications under a three-step sequential process. 20 C.F.R. § 416.924(a), (f). The three steps address the following questions:

1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled. If not, the analysis proceeds to step two.

2. Does the claimant have a severe medically determinable impairment or combination of impairments? If not, he is not disabled. Otherwise, the analysis proceeds to step three.

3. Does the claimant have an impairment or combination of impairments that meets or medically equals a listed impairment, or functionally equals the listings, and satisfies the duration requirement? If so, the claimant is disabled. If not, the claimant is not disabled.

20 C.F.R. § 416.924(b), (c), (d)(1)–(2).

The ALJ then used a five-step process[2] to analyze Plaintiff's SSI application for the period after Plaintiff turned eighteen. (*Id*. at 11–13, 13–15.)[3] At step one, the ALJ determined

---

[2] For the period beginning when a claimant attains age eighteen, Social Security regulations require ALJs to evaluate SSI applications under a five-step sequential process. *See* 20 C.F.R. §§ 416.920(a)(2), (4), 416.924(f). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Hensley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] The ALJ did not separately address Plaintiff's CDB application. But to qualify for CDB, Plaintiff had to establish, among other things, that he was disabled as an adult and that his disability began before age twenty-two. *See* 20 C.F.R. § 404.350(a)(5). When evaluating Plaintiff's SSI application, the ALJ found that Plaintiff was not disabled from the time he turned eighteen through the date of the July 29, 0225 determination. (R. at 13–15, 27–36.) Because Plaintiff turned twenty-two for Social Security purposes on July 7, 2025, that post-eighteen non-disability finding applied to the period between Plaintiff's eighteenth and twenty-second birthdays and continued through the date of the decision. It therefore covered the adult period relevant to Plaintiff's CDB application. The ALJ's evaluation of that post-eighteen period for Plaintiff's SSI application was also governed by the same five-step process that would have applied to Plaintiff's CDB application if the ALJ separately considered it. *See* 20 C.F.R. §§ 404.1520(a)(2), (4), 416.920(a)(2), (4). Therefore, a separate evaluation of Plaintiff's CDB application would have been the same. In any event, Plaintiff has not challenged the ALJ's failure to separately address his CDB application. Any such challenge has, therefore, been forfeited.

that Plaintiff had not engaged in substantial gainful activity. (*Id* at 15.) The ALJ then determined that Plaintiff continued to experience the same severe medically determinable impairments (obesity and borderline intellectual functioning) after turning eighteen, but that he had not developed any new ones. (*Id*. at 15, 27.) At step three, he ALJ determined that since turning eighteen, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 27.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[4] as follows:

> After careful consideration of the entire record, the undersigned finds that, since attaining age 18, the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except the claimant can understand, remember and carry out simple instructions, and can concentrate, persistent and maintain pace performing simple tasks, but the tasks are not performed in a fast-paced work setting (such as work on an assembly line, or that requires production rates or quotas); he can deal with occasional changes in a routine work setting; he can have no interaction with the general public, and he can occasionally interact with co-workers and supervisors.

(*Id*. at 30.)

At step four, the ALJ determined that Plaintiff had no past relevant work. (*Id*. at 35.) The ALJ then relied on the VE's testimony at step five to determine that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including the representative jobs of floor waxer, industrial cleaner, and cleaner. (*Id*. at 36.) Accordingly, the ALJ determined that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*. at 36–37.)

[4] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. § 416.945(a)(1), (b)–(c).

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y of Health & Hum. Serv.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As explained above, Plaintiff contends that the ALJ committed reversible error when evaluating prior administrative findings from state agency reviewers. (Pl.'s Statement of Errors 7–11, ECF No. 10.) The undersigned is not persuaded.

### A. The Evaluation of Medical and Other Types of Evidence

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[5] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering those categories of evidence: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and an ALJ must explain how they were considered. *Id.* With regard to supportability "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[ ] . . . the more persuasive the medical

---

[5] Because Plaintiff's applications were filed in in 2021 and 2022, they are subject to regulations governing applications filed on or after March 27, 2017.

opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion[ ] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[ ] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

**B. The Prior Administrative Findings**

On March 28, 2022, Irma Johnston, Psy.D. reviewed Plaintiff's file at the initial level. (R. at 115–18.) Dr. Johnston found, in relevant part, that Plaintiff had only mild limits in the ability to interact with others and that this did not result in any significant functional limits. (*Id*. at 115, 118.)

At the reconsideration level, Jennifer Swain, Psy.D., reviewed Plaintiff's file on July 5, 2022. (*Id*. at 130–32, 139–40.) Unlike Dr. Johnston, she determined that Plaintiff had moderate limits in the ability to interact with others, and that as a result, Plaintiff "maintain[ed] the ability to work in a non-public work environment in which interaction with coworkers and supervisors is occasional and superficial." (*Id*. at 140.)

**C. The ALJ Evaluation of Dr. Swain's Social Interaction Findings**

The ALJ explained Dr. Swain's findings were only partially persuasive because, in part, she used "wording that was not vocationally defined." (*Id*. at 34.) The ALJ then explained that Dr. Swain's social interaction findings were not supported by the record. The ALJ wrote as follows:

> Moreover, Dr. Swain found that the claimant maintains the ability to work in a non-public environment in which interaction with coworkers and supervisors is occasional and superficial (Exhibit 6A 7). However, the need for superficial interaction, which is defined as only shallow or cursory interaction with others, is not supported by the record or the objective evidence in the file. The claimant testified that he played on his high school football team with no apparent issues. Additionally, the claimant's IEP reported that he was "very social within school settings" and enjoyed "hanging out" with his friends and teammates from the

> football team (Exhibit 1F 3). The claimant also reported on his checklist of strengths and weaknesses, that a strength of his was working well with kids his own age as well as adults and in asking for help (Exhibit 1F 30). Therefore, the undersigned's limitations in the RFC of having occasional interaction with coworkers and supervisors is sufficient to address the claimant's function limitations in interacting with others.

(*Id.*) As this discussion demonstrates, the ALJ determined that a Plaintiff was capable of occasional interactions without needing his interactions to be superficial. (*Id.*)

The ALJ's determination was based on a number of factors. To begin with, the ALJ explained that she discredited Dr. Swain's finding because she used "wording that was not vocationally defined." (*Id.*) It is unclear, however, if the ALJ referred to Dr. Swain's use of the term superficial. To the extent she did, the undersigned cannot endorse that explanation. The Sixth Circuit Court of Appeals has acknowledged that a superficial interaction limit is a well understood work limitation. *See Preston v. Comm'r of Soc. Sec.*, No. 22-4026, 2023 WL 4080104, at 4 (6th Cir. June 20, 2023) (quoting *Miles v. Comm'r of Soc. Sec. Admin.,* No. 3:20-cv-410, 2021 WL 4905438, at 5 (S.D. Ohio Oct. 21, 2021) (Silvain, M.J.) ("We find nothing wrong in the ALJ's use of the term 'superficial,' a 'well-recognized work-related limitation,' in the interrogatories to the vocational expert."), *report and recommendation adopted*, 2021 WL 5235326 (S.D. Ohio Nov. 10, 2021) (Rice, J.)).

Many District Courts sitting in the Sixth Circuit have also held that a limit to superficial interactions is understood as a limit regarding the quality of a plaintiff's workplace interactions. *See, e.g.*, *Deana L. F. v. Comm'r of Soc. Sec.*, No. 2:25-CV-1121, 2026 WL 1587259, at *2 (S.D. Ohio June 3, 2026) (Watson, J.) ("The Undersigned agrees with those judges who have concluded that, at least with respect to the term 'superficial,' it is capable of being understood and translated into vocational limitations."); *Spinner v. Comm'r of Soc. Sec.*, No. 2:20-CV-4676, 2021 WL 7908552, at *2 (S.D. Ohio Nov. 29, 2021) (Watson, J.) (explaining that a "'superficial'

interaction is a well-defined limitation in the Social Security context"); *Hummel v. Comm'r of Soc. Sec.*, No. 2:18-CV-00028, 2020 WL 13572215, at *4 (S.D. Ohio Mar. 13, 2020) (Graham, J.) ("Stated simply, 'superficial interaction' is a well-recognized, work-related limitation."); *Dawn V. v. Comm'r of Soc Sec.*, No. 1:25-CV-00570, 2026 WL 2874064, at *5 (S.D. Ohio Sept. 24, 2026) (Gentry, M.J.) ("[T]his Court has repeatedly held that superficial interaction is a well-recognized, work-related limitation.'") (internal quotations omitted); *Hutton v. Comm'r of Soc. Sec.*, No. 2:20-CV-339, 2020 WL 3866855, at *5 (S.D. Ohio July 9, 2020) (Vacura, M.J.) (explaining that "'superficial interaction' is a well-recognized, work-related limitation"), *report and recommendation adopted sub nom.*, *Hutton v. Comm'r of Soc. Sec. Admin.*, 2020 WL 4334920 (S.D. Ohio July 28, 2020) (Morrison, J.); *Neal B. v. Comm'r of Soc. Sec. Admin.*, No. 3:23-CV-75, 2024 WL 963713, at *5 (S.D. Ohio Mar. 5, 2024) (Silvain, M.J.) ("Contrary to the ALJ's initial conclusion, 'superficial' contact is a well-recognized work-related limitation."); *William H. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-00219, 2022 WL 4591304, at *4 (S.D. Ohio Sept. 30, 2022) (Gentry, M.J.) (same); *Kenneth A. v. Comm'r of Soc. Sec.*, No. 3:22-CV-110, 2022 WL 17484356, at *5 (S.D. Ohio Dec. 7, 2022) (Vascura, M.J.) (same); *Markcus C. v. Comm'r of Soc. Sec.*, No. 2:22-CV-1917, 2023 WL 1775612, at *5 (Litkovitz, M.J.) (S.D. Ohio Feb. 6, 2023) (same), *report and recommendation adopted*, 2023 WL 2162261 (S.D. Ohio Feb. 22, 2023) (Morrison, J.).

As a result, some District Courts have found reversible error when an ALJ discounts an opined superficial interaction limit only because it is purportedly vague or "not vocationally relevant." *See, e.g.*, *Swank v. Comm'r of Soc. Sec.*, No. 2:20-CV-2396, 2021 WL 1345420, at *4–5 (S.D. Ohio Apr. 12, 2021) (Deavers, M.J.), *report and recommendation adopted*, 2021 WL 1909701 (S.D. Ohio May 12, 2021) (Graham, J.). Likewise, District Courts have found

reversible error where an ALJ credits a medical opinion or prior administrative finding that includes a superficial interaction limit but then omits that limit or substitutes another limit for it without adequately explaining why. *See, e.g.*, *Sue A. M. v. Comm'r of Soc. Sec.*, No. 3:22-CV-171, 2022 WL 14346260, at *3–4 (S.D. Ohio Oct. 25, 2022) (Vascura, M.J.), *report and recommendation adopted sub nom., Sue A. M. v. Comm'r of the Soc. Sec. Admin.*, 2022 WL 17414973 (S.D. Ohio Dec. 5, 2022) (Newman, J.); *Garvin v. Comm'r of Soc. Sec.,* No. 2:20-CV-2566, 2021 WL 2200423, at *5 (S.D. Ohio June 1, 2021) (Deavers, M.J.), *report and recommendation adopted,* 2021 WL 2533191 (S.D. Ohio June 21, 2021) (Sargus, J.).

These principles do not, however, establish reversible error in all cases. For instance, there is no reversible error when an ALJ discredits a superficial interaction for legitimate record-based reasons in addition to its purported vagueness. *See, e.g., Deana L. F.*, 2026 WL 1587259, at *3 (Watson, J.) (finding no reversible error where ALJ discounted a superficial interaction limit because it was not vocationally defined; ALJ also discounted it because the record evidence showed a "greater capacity for interaction" and substantial evidence supported that alternative determination); *Crystal Ann B. v. Comm'r of Soc. Sec.*, No. 2:25-CV-322, 2025 WL 2611969, at *6 (S.D. Ohio Sept. 10, 2025) (Vascura, M.J.) (finding no reversible error where ALJ discounted a superficial interaction limit for vagueness; ALJ also discounted it because it was inconsistent with treatment records describing plaintiff as pleasant and cooperative).

Similarly, there is no reversible error when an ALJ discounts a superficial limit because it is purportedly vague but nevertheless includes limits in an RFC that adequately captures the qualitative nature of a superficial interaction. *See, e.g.*, *Dickinson v. Comm'r of Soc. Sec.*, No. 2:19-CV-3670, 2020 WL 4333296, at *11 (S.D. Ohio July 28, 2020) (Deavers, M.J.) (finding no reversible error where ALJ declined to incorporate an opined superficial interaction because it

was "not vocationally relevant;" ALJ included a "no tandem task" limit that adequately addressed it), *report and recommendation adopted*, 2020 WL 5016823 (S.D. Ohio Aug. 25, 2020) (Graham, J.). *See also Aalijah v. Comm'r of Soc. Sec.*, No. 2:23-CV-1955, 2024 WL 2315290, at *2 (S.D. Ohio May 22, 2024) (Watson, J.) (finding that a limit to no tandem or team tasks adequately accommodated a superficial interaction limit).

Finally, the Sixth Circuit has clarified that because superficial is not defined by regulation or agency guidelines, when an opining source does not define a superficial interaction limit, an ALJ may define that limit provided the ALJ's definition reasonably captures the qualitative nature of the restriction. *Mabry-Schlicher v. Comm'r of Soc. Sec.*, No. 24-3811, 2025 WL 1604376, at *5 (6th Cir. June 6, 2025) (finding ALJ did not err where he "delineated specific social restrictions based on his understanding of what a 'superficial' contact limitation require[d] in this context").

Given these principles, the undersigned concludes that the ALJ did not reversibly err. Dr. Swain found that Plaintiff was limited to a non-public work environment and occasional and superficial interactions with coworkers and supervisors. (R. at 140.) Dr. Swain did not, however, define the term superficial. (*Id.*) The ALJ was therefore permitted to supply a definition. *See Mabry-Schlicher*, 2025 WL 1604376, at *5. And the undersigned cannot conclude that the ALJ's definition—shallow or cursory contact—failed to capture the qualitative nature of that superficial restriction. *Id*. Indeed, the ALJ's definition of superficial appears to correspond to one that Plaintiff himself proposed. (R. at 513–17.)

The ALJ also explained why she declined to incorporate Dr. Swain's superficial interaction limit. Although the ALJ limited Plaintiff to no interaction with the public and occasional interactions with coworkers and supervisors, she found that Plaintiff's social abilities

did not warrant an additional superficial interaction limit. (*Id.* at 34.) In support of that determination, the ALJ cited Plaintiff's participation in team sports, friendships with teammates, and school records describing him as sociable and able to interact with peers and adults. (*Id.*)

Substantial evidence supports the ALJ's explanation. Plaintiff's 2020 school records described him as "very social within the school setting" and noted that he enjoyed "'hanging out' with his friends and teammates from the football team." (*Id.* at 552.) The ALJ also cited a school record completed just four months before Plaintiff turned eighteen, which documented that Plaintiff's self-identified strengths included working well with other kids and adults, listening to others, asking questions, accepting help, and having a good attitude. (*Id.* at 34, 579–80.)

Plaintiff does not challenge these record-based reasons for determining that a superficial interaction was unwarranted. Instead, Plaintiff contends that the ALJ cited his high school records, and thus, failed to adequately address Plaintiff's functioning after he turned eighteen. (Pl.'s Statement of Errors 9–10, ECF No. 9–10.)

The undersigned is not persuaded. First, one of the school records the ALJ cited was completed only four months before Plaintiff turned eighteen. (R. at 34, 579–80.) Although that record may have been less probative of Plaintiff's adult functioning, the undersigned cannot conclude that it was wholly irrelevant.

More importantly, elsewhere in the same section of the determination, the ALJ also discussed evidence of Plaintiff's social functioning after his eighteenth birthday in July 2021. For example, the ALJ noted Plaintiff's 2023 testimony that, although he was quiet in public, he always felt normal around other people. (*Id.* at 31, 89, 95.) The ALJ also discussed a consultative examiner's 2022 report describing Plaintiff as cooperative and noting that the examiner was able to establish adequate rapport with Plaintiff despite Plaintiff's somewhat withdrawn presentation

and downcast expression. (*Id*. at 31, 632.) Similarly, the ALJ noted that a provider described Plaintiff in 2022 as cooperative and having good eye contact. (*Id.* at 32, 645.)

The ALJ further considered evidence from 2022 that Plaintiff had a few online friends and that providers described him as adjusting to life after high school. The ALJ noted that Plaintiff's loss of friends appeared to be attributable to graduating and the resulting lack of regular contact with his peers. (*Id*. at 33, 716–17, 722, 731, 753.)

Thus, contrary to Plaintiff's contentions, the ALJ did not exclusively rely on evidence that predated his eighteenth birthday. Rather, the ALJ considered Plaintiff's social functioning both before and after he turned eighteen. Although the ALJ did not repeat all this evidence when explaining her decision to omit Dr. Swain's superficial interaction limit, the ALJ's discussion elsewhere in the same section of the determination sufficiently "connect[ed] the dots" between the evidence and that decision. *See Dunlavy v. Comm'r of Soc. Sec.,* No. 24-3333, 2024 WL 4558606, at *3 (6th Cir. Oct. 23, 2024) (upholding the ALJ's rejection of proposed mental limitations based on evidence discussed elsewhere in the same section of the decision and concluding that the discussion sufficiently "connect[ed] the dots").

Plaintiff also points to evidence that he contends supports a superficial interaction limit, including his difficulties after ending a relationship with a girlfriend and the loss of his father. But the ALJ did not overlook these difficulties. Instead, she acknowledged them. (R. at 32, 33.) In light of them, and other evidence, she limited Plaintiff to no contact with the public and occasional interactions with coworkers and supervisors. That determination was supported by substantial evidence. And where an ALJ's determination is supported by substantial evidence, it will be upheld even if other evidence could support a different conclusion. *See Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

In sum, the undersigned concludes that the ALJ did not reversibly err by declining to adopt Dr. Swain's superficial interaction limit. The ALJ reasonably defined the term superficial, explained why an additional superficial limit was unwarranted, and supported that explanation with substantial evidence. The ALJ's determination, read as a whole, also demonstrates that she considered evidence both before and after Plaintiff turned eighteen. Plaintiff's contrary contention lacks merit.

## V. RECOMMENDED DISPOSITION

Accordingly, for all the reasons contained herein, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report

and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE